## UNITED STATES DISTRICT COURT

## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DIANE MORSE,<br><br>    Plaintiff<br><br>    V.<br><br>METROPOLITAN LIFE INSURANCE COMPANY AND 3PHASE ELEVATOR CORPORATION GROUP INSURANCE PLAN,<br><br>    Defendants | CIVIL ACTION NO. |

## COMPLAINT

## INTRODUCTION

1.    Plaintiff, Diane Morse ("Ms. Morse") brings this action against the Defendants, Metropolitan Life Insurance Company ("MetLife") and the 3Phase Elevator Corporation Group Insurance Plan ("Plan") (collectively referred to as "Defendants"), for violations of the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. §§ 1001 *et. seq*. ("ERISA"). Ms. Morse is a participant in an ERISA welfare benefit plan insured and administered by MetLife.

2.    Ms. Morse is filing this action to recover long-term disability ("LTD") benefits due to her under the Plan, to enforce the present rights existing under the Plan, and to clarify her rights under the terms of the Plan. Ms. Morse also seeks to recover attorney's fees and costs pursuant to 29 U.S.C. § 1132(g) and ERISA § 502(g) and twelve percent interest pursuant to Massachusetts law.

3.      Ms. Morse challenges the Defendants': 1) unreasonable and unlawful denial of Ms.

Morse's LTD benefits despite the substantial medical and vocational evidence

demonstrating Ms. Morse's qualification for said benefits; 2) repeated pattern of rejecting

and failing to engage with the substantial evidence supporting Ms. Morse's disability in an

effort to limit Defendants' financial exposure for Ms. Morse's claim; 3) failure to provide

Ms. Morse with a full and fair review of her claim for LTD benefits, including repeatedly

ignoring information supporting Ms. Morse's entitlement to benefits, as well as denying

her benefits without engaging with the evidence supporting her functional limitations; and

4) failure to provide a reasonable claims procedure that would yield an impartial decision

on the merits of Ms. Morse's LTD claim.

## JURISDICTION AND VENUE

4.      Jurisdiction of the Court is based upon the Employee Retirement Income Security Act of

1974 ("ERISA"), in particular, 29 U.S.C. §§ 1132(e)(1) and 1132(f). Those provisions give

the district court jurisdiction to hear civil actions brought to recover benefits due under the

terms of an employee welfare benefit plan, which, in this case, consists of a group long-

term disability insurance plan underwritten by MetLife for the benefit of employees of

3Phase Elevator Corporation, which includes Ms. Morse.

5.      Additionally, this action may be brought before this court pursuant to 28 U.S.C. 1331,

which gives the district court jurisdiction over actions that arise under the laws of the

United States.

6.      ERISA provides, at 29 U.S.C. § 1133, a mechanism for administrative or internal appeal

of benefit denials. Those avenues of appeal have been exhausted.

7.      Venue is proper in this district as Ms. Morse participated in the employee benefit plan at

issue within this district, many of the events and occurrences relevant to this matter occurred within this district, and the Defendants conduct business in this district.  29 U.S.C. § 1132(e)(2); 28 U.S.C. § 1391.

## PARTIES

8.   Ms. Morse was a resident of Massachusetts when she became disabled and began receiving benefits from Defendants under the Plan. Ms. Morse is a vested participant in Defendants' employee benefit plans, within the meaning of 29 U.S.C. § 1002(2)(7). Ms. Morse has standing to bring this action under 29 U.S.C. § 1132(a).

9.   The defendant, MetLife, is a for-profit insurance company, with its principal place of business in New York, New York. MetLife transacts business in Massachusetts and insures the Plan under which Ms. Morse is suing.

10.   At all times relevant to the claims asserted in this Complaint, MetLife purported to act as an ERISA claims fiduciary with respect to participants of the Plan generally, and more specifically with respect to Ms. Morse, within the meaning of ERISA.

11.   The Plan under which Ms. Morse is suing is an "employee welfare benefits plan" as defined by ERISA, 29 U.S.C. §1002(1).

## STATEMENT OF FACTS

**Relevant Plan Terms.**

12.   As an employee of 3Phase Elevator Corporation, Ms. Morse was eligible for LTD coverage under a contract of insurance with MetLife.

13.   The Plan is administered by MetLife.

14.   The Plan contains a narrow definition of disability Ms. Morse must meet to prove her eligibility for benefits:

**Disabled** or **Disability** means that, due to Sickness or as a direct result of accidental injury:
You are receiving Appropriate Care and Treatment and complying with the requirements of such treatment; and
You are unable to earn 80% of Your Predisability Earnings at Your Own Occupation for any employer in Your Local Economy; and

For purposes of determining whether a Disability is the direct result of an accidental injury, the Disability must have occurred within 90 days of the accidental injury and resulted from such injury independent of other causes.

If Your occupation requires a license, the fact that You lose Your license for any reason will not, in itself,
constitute Disability.

15. As a result of the functional limitations imposed by her illness, Ms. Morse has met her burden of proving that due to her sickness she is receiving appropriate care and treatment, complying with the requirements of such treatment and unable to earn 80% of her Predisability earnings at her own occupation.

16. Ms. Morse has met the burden of proving that she meets the Plan definition of disability and is therefore eligible for LTD benefits under the terms of the Plan.

17. Neither the Plan nor MetLife has any administrative processes and safeguards (as those terms are used in 29 C.F.R. §2560.503-1) in place to ensure and to verify appropriately consistent decision making.

18. The Plan does not confer discretion on MetLife to determine eligibility for benefits or to interpret the terms of the Plan.

19. Any discretion that may be contained in the Plan was not delegated to MetLife.

20. The judicial standard of review of this matter is de novo.

## Defendants' Conflict of Interest

21. MetLife's financial conflict of interest as the payor of Ms. Morse's benefits infected its decision to deny Ms. Morse's LTD benefits, and its handling of Ms. Morse's claim.

22.     MetLife's conflict of interest is exemplified, in part, by the following: 1) its full approval
        of Ms. Morse's short-term disability benefits through the date LTD benefits were scheduled
        to begin, then denying her claim for LTD benefits the following day, without any notations
        of improvements in Ms. Morse's illness, Parkinson's Disease, which is a progressive in
        nature ; 2) its reliance on biased MetLife physician, Dr. Alexander Rotenberg, to justify its
        denial of Ms. Morse's benefits; 3) its reliance on biased physicians, Drs. Scott Norris,
        David Burke and Zeyad Morcos, to uphold its denial of Ms. Morse's claim; 4) its denial of
        Ms. Morse's claim despite the substantial medical evidence supporting her claim; 5) its
        deference to its own record reviewing physicians to uphold the denial of Ms. Morse's
        benefits, while unreasonably dismissing the opinions of Ms. Morse's treating physicians
        whose opinions were supported by an independent Functional Capacity Evaluations
        ("FCE"); 6) its dismissal of the evidence submitted by Ms. Morse in support of her claim;
        7) its failure to address the vocational evaluations of Ms. Morse's claim even though the
        standard of disability is based on her inability to perform the duties of her own occupation;
        and 8) its failure to conduct an independent review of all the evidence in the record, but
        rather to defer, entirely, upon the decisions of its reviewing physicians.

23.     Defendants failed to "conduct[] [themselves] as a true fiduciary attempting to fairly decide
        a claim, letting the chips fall as they may[]" in its review of Ms. Morse's claim. *Lavery v.
        Restoration Hardware Long Term Disability Benefits Plan*, 937 F.3d 71, 79 (1st Cir. 2019).

## Ms. Morse's Claim for LTD Benefits

24.     Ms. Morse was a Office Manager at 3Phase Elevator Corporation at the time she became
        disabled.

25.     Ms. Morse ceased working on February 15, 2021, as a result of debilitating symptoms due

to Parkinson's Disease.

26.    Ms. Morse applied for and received full short-term disability benefits from MetLife for the period of February 16, 2021 through May 24, 2021, the full benefit period. Ms. Morse also received Massachusetts Paid Family Medical Leave during that time.

27.    Despite the lack of improvement in her progressive condition, MetLife denied Ms. Morse's claim for LTD benefits which would have begun on May 25, 2021.

28.    MetLife's assertion that Ms. Morse was not disabled was unreasonable and unsupported by the substantial evidence in MetLife's possession as well as its own decision and review of Ms. Morse's claim for short-term disability benefits.

29.    Following the denial of her claim, counsel for Ms. Morse wrote the Defendants requesting a copy of Mr. Morse's claim file, including the Defendants' internal reviews, so Ms. Morse could effectively respond to the basis of the Defendants' denial of her claim for benefits.

30.    On October 17, 2022, Ms. Morse appealed MetLife's decision to deny her benefits.

31.    As part of her appeal, Ms. Morse submitted medical records, reports from her treating physicians documenting her ongoing functional limitations due to her illness, as well as independent functional capacity testing and an independent vocational report.

32.    MetLife sent Ms. Morse peer reviews to respond to on November 16, 2022, December 30, 2023, and January 18, 2023.

33.    Ms. Morse's counsel responded to MetLife's peer reviews on December 7, 2022, January 23, 2023, February 22, 2023, March 2, 2023, and March 9, 2023, with detailed documentation supporting her claim for benefits and outlining the errors within the reviews MetLife had completed.

34.   Although Ms. Morse's condition had not improved following her period of short-term disability, and her detailed submission on appeal and peer review responses outlined her ongoing functional limitations, on March 15, 2023, MetLife upheld its denial of Ms. Morse's claim for LTD benefits

35.   The Defendants have never acknowledged the fundamental errors in their review of Ms. Morse's claim, including for example, their failure to recognize the relevancy of the FCE conducted, which found Ms. Morse to be functionally limited from performing the duties of her own or any occupation.

36.   Courts have repeatedly held that FCE findings provide objective proof of a claimant's functional ability. *See e.g.*, *Gannon v. Metropolitan Life Ins. Co.,* 360 F.3d 211, 213 (1st Cir. 2004).

37.   As Judge Richard Stearns of the United States District Court for the District of Massachusetts, noted in *Martin v. Polaroid Corporation Long Term Disability Plan,*

> While it is true ... that a claimant bears the burden of proving disability, ... the claims process is not an adversarial one, but a collaborative effort on the part of the claimant and the plan administrator, the ultimate goal of which is not to trick a claimant out of benefits that [s]she deserves because of a failure on her part to square every corner, but to achieve a result that is fair to both the claimant and the Plan.

*Martin v. Polaroid Corporation Long Term Disability Plan*, 2004 WL 1305661 At * (May 27, 2004).

38.   Defendants' review of Ms. Morse's claim was adversarial in nature.

39.   Defendants had the contractual ability to request Ms. Morse undergo a medical examination with a doctor of its choosing, as permitted by the terms of the Plan, but did not do so.

40.   Defendants' final determination letter relied exclusively on Dr. Morco's medical review to

uphold the denial of Ms. Morse's claim, ignoring the evidence submitted by Ms. Morse's treating physicians, the independent FCE, the independent vocational evaluations, the requirements of Ms. Morse's occupation, and Ms. Morse's clinical evaluations.

41.   The Massachusetts Board of Registration in Medicine's regulations, specifically, 243 CMR 2.01, require physicians conducting an in-person or paper review of an individual seeking disability benefits to have a full license to practice medicine in Massachusetts.

42.   Dr. David Burke, MetLife's reviewing physician, was not licensed to practice medicine in Massachusetts and thus his reviews should be ignored.

43.   243 CMR 2.01 is not preempted by ERISA.

44.   243 CMR 2.01 does not contradict ERISA's implementing regulations.

**Summary of Defendants' Review of Ms. Morse's Claim for Benefits.**

45.   Ms. Morse has exhausted her administrative remedies pursuant to C.F.R. § 2560.503-1(1).

46.   Ms. Morse's disability and eligibility for LTD benefits is based on the substantial evidence in Defendants' possession.

47.   Ms. Morse's condition had not changed, nor had it improved, at the time Defendants denied her claim for benefits.

48.   Since the date of onset of her disability, Ms. Morse has been and remains unable to perform the material and substantial duties of her own occupation due to her condition. Since her condition is chronic and progressive and has not improved in any material respect despite extensive workups and diagnostic testing, there does not appear to be any reasonable medical likelihood of medical improvement. As a result, Ms. Morse is entitled to the reinstatement of her benefits with payment of all benefits in arrears with 12% interest, along with continuation of payments so long as she meets the Plan definition of "disabled".

49.     The Defendants and their medical reviewers arbitrarily dismissed Ms. Morse's symptoms and functional limitations when they determined that Ms. Morse was not disabled.

50.     The Defendants failed to address or evaluate the clinical findings of Ms. Morse's treating and evaluating physicians regarding Ms. Morse's symptoms, restrictions, functional limitations, and disability.

51.     The Defendants' reviewers' opinions should be afforded little weight as, upon information and belief, they failed to consider all the evidence, medical or otherwise, were selective in the medical information that they relied upon, were unreasonable in their conclusions, and failed to provide a fair analysis of Ms. Morse's claim.

52.     The Defendants failed to address or evaluate the clinical findings of Ms. Morse's treating and evaluating physicians regarding Ms. Morse's symptoms, restrictions, functional limitations and disability.

53.     The Defendants repeatedly and unreasonably dismissed Ms. Morse's symptoms.

54.     The Defendants failed to conduct a reasonable vocational review of Ms. Morse's ability to perform the material and substantial duties of her own occupation, as required by the terms of the Plan.

55.     The Defendants failed to address Ms. Morse's vocational review in its final determination letter, in violation of ERISA's implementing regulations.

56.     The Defendants unsupported dismissal of the opinions of Ms. Morse's treating providers along with its failure to properly address the vocational assessments of Ms. Morse's claim demonstrate a biased review process.

57.     The only evaluators to question Ms. Morse's veracity were Defendants' file reviewing doctors, none of whom examined or spoke to Ms. Morse or her treatment providers.

58.     By refusing to engage with information Defendants acknowledged was required to complete its review, *i.e.*, evidence Ms. Morse's symptoms impacted her functionality, Defendants proved that their financial conflict of interest impacted their decision to deny Ms. Morse's benefits and was unreasonable. *See Petrone v. Long Term Disability Income Plan for Choices Eligible Employees of Johnson & Johnson and Affiliated Cos.* 935 F.Supp. 2d 278. 293 (D.Mass. 2013) (an "administrator cannot simply ignore contrary evidence, or engage with only that evidence which supports his conclusion.").

59.     The Defendants failed to meet the minimum requirements for the denial of Ms. Morse's LTD benefits, in violation of ERISA, 29 U.S.C. 1133 which requires that upon a denial of benefits, the administrative review procedure must include adequate notice in writing setting forth the specific reasons for the denial of benefits and a reasonable opportunity for a full and fair review by the appropriate named fiduciary of the decision denying the claim.

60.     Defendants failed to meet the notice requirements required by ERISA's implementing regulations. Defendants' adverse determination letters failed to articulate the basis for the decision to deny benefits, failed to contain a full discussion of why Ms. Morse's claim was denied and terminated, and failed to detail the standard behind the decision.

61.     The Defendants failed to meet the Plan's requirements for review of claims that have been denied.

62.     The Defendants failed to provide Ms. Morse with a full and fair review of her claim for LTD benefits.

63.     The Defendants failed to respond to Ms. Morse's attempts to engage in meaningful dialogue regarding the evaluation of her claim for LTD benefits.

64. The Defendants failed to engage with the objective evidence supporting Ms. Morse's disability.

65. The Defendants routinely ignored communications from Ms. Morse regarding her claim for LTD benefits.

66. The Defendants failed to engage with the objective evidence supporting Ms. Morse's disability.

67. Any discretion to which Defendants may claim they are entitled under the terms of the Plan is negated by its failure to provide Ms. Morse with an explanation as to its adverse actions as proscribed by ERISA and its implementing regulations.

68. Any discretion to which Defendants may claim they are entitled under the terms of the Plan is negated by its failure to provide Ms. Morse with a full and fair review of her claim.

69. The Defendants failed to disclose all the internal guidance available to claims representatives in evaluating Ms. Morse's claims despite Ms. Morse's request for this information, and despite ERISA's implementing regulations' requirement to disclose this information.

70. The decision to deny Ms. Morse's LTD benefits was self-serving, wrongful, unreasonable, irrational, solely contrary to the evidence, contrary to the terms of the Plan, and contrary to the law.

71. The Defendants were influenced by their financial conflict of interest when they denied Ms. Morse's LTD benefits and failed to provide her with the full and fair review of her claims required by law.

72.     Due to the unlawful denial of benefits under ERISA, Ms. Morse has lost her rightful LTD

benefits. She has also suffered emotional and financial distress as a result of the

Defendants' actions.

73.     As a result of the denial of her claim for LTD benefits, Ms. Morse has lost the use of her

LTD benefits.

Ms. Morse is entitled to restitution for the loss of her benefits at the Massachusetts statutory

12% interest rate.

**FIRST CAUSE OF ACTION**
**(Breach of Contract)**
**(ALL DEFENDANTS)**

73.     Ms. Morse realleges each of the paragraphs above as if fully set forth herein.

74.     The LTD Plan is a contract.

75.     Ms. Morse has performed all her obligations under the contract.

76.     29 U.S.C. § 1132(a) states that:

        (B) A civil action may be brought---

        1.      by a participant or beneficiary –

                A. for the relief provided for in subsection (c) of this section, or

                B. to recover benefits due to her under the terms of her plan, to enforce her

                    rights under the terms of the plan, or to clarify her rights to future benefits

                    under the terms of the plan

77.     Ms. Morse's first claim is for breach of contract.

78.     Ms. Morse entered into a valid contract with the Defendants for the provision of disability

insurance, in the event she required such insurance.

79.   Ms. Morse fulfilled the terms of the contract by remitting premium payments on a monthly basis, as required under the terms of the policies.

80.   Ms. Morse met all the conditions for the payment of disability insurance benefits under the policies, including but not limited to, providing the Defendants with proof of her disability under the terms of the insurance contract. Nonetheless, the Defendants have failed to provide Ms. Morse with the benefits she is due under the terms of the contract.

81.   The Defendants, by denying Ms. Morse's claim despite the voluminous evidence supporting Ms. Morse's disability under the terms of the policy, has breached its duties and obligations under its contract with Ms. Morse, resulting in monetary injury to Ms. Morse.

82.   Ms. Morse has been damaged by reason of the Defendants' breach of contract and is entitled to recover from the Defendants her past and future disability benefits, as well as reimbursement of premiums paid under the policies.

**SECOND CAUSE OF ACTION**
**(Attorney's Fees and Costs)**
**(ALL DEFENDANTS)**

83.   Ms. Morse realleges each of the paragraphs above as if fully set forth herein.

84.   Under the standards applicable to ERISA, Ms. Morse deserves to recover "a reasonable attorney's fee and costs of the action" herein, pursuant to section 502(g)(1) of ERISA, 29 U.S.C. § 1132(g).

85.   Defendants have the ability to satisfy the award.

86.   Ms. Morse's conduct of this action is in the interests of all participants who subscribe to the Plan, and the relief granted hereunder will benefit all such participants.

87.   Ms. Morse's conduct of this action is in the interests of individuals participating in ERISA plans where the plan administrators have violated ERISA's implementing regulations for their own financial benefit.

88.   Ms. Morse's conduct of this action is in the interests of all individuals who lack the financial ability to pursue their claims for benefits as a result of the denial of their disability benefits.

89.   The Defendants have acted in bad faith in denying Ms. Morse's disability benefits under the Plan.

90.   The award of attorneys' fees against the Defendants will deter others acting under similar circumstances.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiff respectfully prays that the Court:

(1)   Declare, adjudge, and decree that Ms. Morse is entitled to retroactive and ongoing disability benefits as calculated under the terms of the Plan.

(2)   Award Ms. Morse disability benefits and 12% interest from the date of the Defendants' breach of contract.

(3)   Declare, adjudge, and decree Ms. Morse was entitled to LTD benefits to which she is entitled as a disabled individual under the terms of the Plan.

(3)   Order that the Defendants make restitution to Ms. Morse in the amount of all losses sustained by Ms. Morse as a result of the wrongful conduct alleged herein, together with 12% prejudgment interest.

(4)   Award Ms. Morse the costs of this action and reasonable attorney's fees; and

(6)   Award such other relief as the court deems just and reasonable.

Date:  July 25, 2023

Respectfully submitted,


DIANE MORSE,

By her attorneys,


*Socorra DeCelle*

Mala M. Rafik
BBO No. 638075
Socorra A. DeCelle
BBO No. 688197
ROSENFELD & RAFIK, P.C.
184 High Street, Suite 503
Boston, MA 02110
T: 617-723-7470
F: 617-227-2843
E:  mmr@rosenfeld.com